1  **JOHN C. ELLIS, JR.**
   California State Bar No. 228083
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, CA 92101-5008
   (619) 234-8467/Fax: (619) 687-2666
4  E-Mail: john_ellis@fd.org

5  Attorneys for Sergio Santos

6

7                  UNITED STATES DISTRICT COURT

8                SOUTHERN DISTRICT OF CALIFORNIA

9                **(HONORABLE IRMA E. GONZALEZ)**

10 UNITED STATES OF AMERICA,          )     Case No. 07CR3216-IEG
                                      )
11          Plaintiff,                )     DATE:        January 14, 2008
                                      )     TIME:        2:00 p.m.
12 v.                                 )
                                      )     STATEMENT OF FACTS AND
13 SERGIO SANTOS,                     )     MEMORANDUM OF POINTS AND
                                      )     AUTHORITIES IN SUPPORT OF
14          Defendant.                )     DEFENDANT'S MOTIONS
   _____)

15

16                           **I.**

17                **STATEMENT OF FACTS**

18         The following statement of facts is based on materials received from the government.  Mr. Santos

19 does not accept this statement of facts as his own, and reserves the right to take a contrary position at motion

20 hearings and trial.  The facts alleged in these motions are subject to amplification and/or modification at the

21 time these motions are heard.

22         Mr. Santos  was arrested on September 24, 2007.  On November 28, 2007, the government filed a

23 one count indictment charging a violation of 8 U.S.C. § 1326.

24              These motions follow.

25 / / /

26 / / /

27 / / /

28

## II.

## MOTIONS TO DISMISS  THE INDICTMENT

**A.**      **Motion to Dismiss The Indictment Because it Fails to Allege All Elements of the Charged Offense**

The indictment must be dismissed because the government has failed to properly allege all elements of the offense.  The Fifth Amendment requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . .."  Consistent with this Constitutional requirement, the Supreme Court has held that an indictment must "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." United States v. Carll, 105 U.S. 611, 612-13 (1881) (emphasis added).  It is black letter law that an indictment that does not allege an element of an offense, even an implied element, is defective, and should be dismissed.  See, e.g., Russell v. United States, 369 U.S. 749, 769-72 (1962); Stirone v. United States, 361 U.S. 212, 218-19 (1960); United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999); United States v. Keith, 605 F.2d 462, 464 (9th Cir. 1979).

In this case, the indictment charges a violation of Title 8, United States Code, Sections 1326(a) and (b).  In United States v. Salazar-Lopez, __ F.3d __, 2007 WL 3085906 at *2 (9th Cir. Oct. 24, 2007), the Ninth Circuit indicated that to be sufficient, an indictment charging a violation of section 1326(b) must allege either that the defendant has been previously removed subsequent to a conviction (*i.e.,* for a misdemeanor, a felony, an aggravated felony, or a crime of violence), or it must allege a specific date of the prior removal. In this case, the indictment only alleges that Mr. Santos "was removed from the United States subsequent to November 28, 2007."  Here, the indictment does not allege either that this removal occurred subsequent to a conviction or allege a specific date of the prior removal.  Therefore, because the indictment does not allege all elements of section 1326(b), the indictment must be dismissed.

Moreover, the indictment fails to allege the following elements necessary to convict Mr. Santos of the offense: that Mr. Santos knew he was in the United States, he failed to undergo inspection and admission by an immigration officer at the nearest inspection point, and that he voluntarily entered the United States. As a consequence, it must be dismissed. See e.g., Nyrienda v. I.N.S., 279 F.3d 620 (8th Cir. 2002) (setting

1  forth the components of an entry under the immigration law); see also United States v. Pernillo-Fuentes, 252

2  F.3d 1030 (9th Cir. 2001);  United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999).[1]

3  **B.    Dismiss The Indictment Because it Violates Mr. Santos's Right to Presentment.**

4           Mr. Santos has a Fifth Amendment right to have a grand jury pass upon those facts necessary to

5  convict him at trial.  In the indictment, the government included the language:  "It is further alleged that

6  defendant SERGIO SANTOS was removed from the United States subsequent to December 15, 2003."[2]  The

7  indictment in this case violates Mr. Santos's right to presentment in two ways.  First, the language added by

8  the government does not ensure that the grand jury actually found probable cause that Mr. Santos was

9  deported after December 15, 2003, as opposed to simply being physically removed from the United States.

10 Second, that the grand jury found probable cause to believe that Mr. Santos was removed "subsequent to

11 December 15, 2003" does not address the possibility that the government may at trial rely on a deportation

12 that was never presented to, or considered by, the grand jury.

13          The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise

14 infamous crime, unless on a presentment or indictment of a Grand Jury."  U.S. Const. Amend. V.  The

15 Sixth Amendment provides that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be

16 informed of the nature and cause of the accusation . . . ."  U.S. Const. Amend. VI.  Thus, a defendant has a

17 constitutional right to have the charges against him presented to a grand jury and to be informed of the

18 grand jury's findings via indictment.  See Russell v. United States, 369 U.S. 749, 763 (1962) (An indictment

19 must "contain[] the elements of the offense intended to be charged, and sufficiently apprise[] the defendant

20 of what he must be prepared to meet.").

21

22          [1]    These issues were decided against Mr. Santos in United States v. Rivera-Sillas, 376

23 F.3d 887 (9th Cir. 2004).  However, these issues remain open in the Supreme Court.  To reserve
   these issues for further review, Mr. Santos incorporates the arguments made by the defendant in

24 Rivera-Sillas.  If the Court wants full briefing on these issues, Mr. Santos will provide it.

25          [2]    Presumably, the government added this language in an attempt to comply with the

26 Ninth Circuit's decision in United States v. Covian-Sandoval, 462 F.3d 1090 (9th Cir. 2006).  In
   Covian-Sandoval, the Ninth Circuit held that it is an Apprendi violation for a court to increase a

27 person's statutory maximum under 8 U.S.C. § 1326(b) via a court-finding that a person had been
   removed from the United States following a conviction.  This language, however, does not cure the

28 problems with this indictment.  Should sentencing become necessary, Mr. Santos will file further
   briefing on this issue.

1    To be sufficient, an indictment must allege every element of the charged offense. See United States

2    v. Morrison, 536 F.2d 286, 287 (9th Cir. 1976) (citing United States v. Debrow, 346 U.S. 374 (1953)).

3    Indeed, in order to be sufficient, an indictment must include implied elements not present in the statutory

4    language. See Du Bo, 186 F.3d at 1179. "If an element is necessary to convict, it is also necessary to indict,

5    because elements of a crime do not change as criminal proceedings progress." United States v. Hill, 279 F.3d

6    731, 741 (9th Cir. 2002). An indictment's failure to "recite an essential element of the charged offense is not

7    a minor or technical flaw . . . but a fatal flaw requiring dismissal of the indictment." Du Bo, 186 F.3d at 1179.

8    In the indictment, the government here has added the language:   "It is further alleged that defendant

9    SERGIO SANTOS was removed from the United States subsequent to December 15, 2003." There is no

10   indication from this "allegation" that the grand jury was charged with the legal meaning of the word

11   "removal" applicable in this context, as opposed to being simply removed from the United States in a

12   colloquial sense. It is clear from Covian-Sandoval that in order to trigger the enhanced statutory maximum

13   contained in section 1326(b), the government must prove that a person was removed—as that term is used

14   in the immigration context—after having suffered a conviction. 462 F.3d at 1097-1098 (noting as part of its

15   analysis that immigration proceedings have fewer procedural protections that criminal proceedings).   A

16   deportation has the following elements: "(1) that a deportation proceeding occurred as to [the] defendant and

17   as a result, [(2)] a warrant of deportation was issued and [(3)] executed by the removal of the defendant from

18   the United States."  See United States v. Castillo-Basa, 483 F.3d 890 (9th Cir. 2007) (citing, without

19   contesting, the elements of a deportation provided by the district court.)  As this is the type of removal the

20   government must prove before a petite jury, it is necessary that the government allege such a removal before

21   the grand jury. As returned, however, there is no assurance from the face of the indictment that the grand jury

22   in this case was charged with the type of removal necessary to increase a person's statutory maximum under

23   section 1326(b).

24   As such, there is no fair assurance that the grand jury will have passed upon those facts necessary

25   to convict Mr. Santos. Additionally, as charged, there is no fair assurance that the indictment will contain

26   those allegations the government will attempt to prove at trial.  If the government alleged before the grand

27   jury that Mr. Santos was removed (in a colloquial sense), but offers proof at trial that Mr. Santos was removed

28   (in an immigration sense), there will be a constructive amendment of the indictment at trial. See Stirone v.

1  United States, 361 U.S. 212, 217-19 (1960).  Either scenario represents a violation of Mr. Santos's right to

2  presentment.  Stirone, 361 U.S. at 218-19.

3       A second problem with the indictment is that there is no indication which (if any) deportation the

4  government presented to the grand jury.  In most cases, the government will have a choice of deportations

5  to present to the grand jury to support an allegation that a person had been deported after a specific date.

6  According to information provided by the government, although not conceded by the defendant, Mr. Santos

7  has been subjected to removal proceedings on more than one occasion.  This renders it a very real possibility

8  that the government alleged one deportation to the grand jury to sustain its allegation that Mr. Santos was

9  removed from the United States, but will attempt to prove at trial a wholly different deportation to sustain its

10  trial proof.  If this were to turn out to be the case, Mr. Santos's right to have the grand jury pass on all facts

11  necessary to convict him would be violated.  See Du Bo, 186 F.3d 1179.

12  **C.**     **Dismiss the Indictment Due to Misinstruction of the Grand Jury.**

13       The indictment in the instant case was returned by the January 2007 grand jury.  That grand jury was

14  instructed on January 11, 2007.  The instructions to the impaneled grand jury deviate from the instructions

15  at issue in the major Ninth Circuit cases challenging a form grand jury instruction previously given in this

16  district in several ways.[3]  First, instructing grand jurors that their singular duty is to determine whether or not

17  probable cause exists and that they have no right to decline to indict when the probable cause standard is

18  satisfied.  Second, instructing grand jurors of a non-existent prosecutorial duty to present exculpatory

19  evidence.  These instructions compounded by the erroneous instructions and comments to prospective grand

20  jurors during *voir dire* of the grand jury panel, which immediately preceded the instructions.  Therefore, the

21  indictment should be dismissed.

22

23

24

25

---

26     [3] See, e.g., United States v. Cortez-Rivera, 454 F.3d 1038 (9th Cir. 2006); United States v.
Navarro-Vargas, 408 F.3d 1184 (9th Cir.) (en banc), cert. denied, 126 S. Ct. 736 (2005) (Navarro-

27  Vargas II); United States v. Navarro-Vargas, 367 F.3d 896 (9th Cir. 2004)(Navarro-Vargas I);
United States v. Marcucci, 299 F.3d 1156 (9th Cir. 2002) (per curiam).  If the Court or the

28  government request further briefing on this issue, or the transcript from the grand jury proceedings,
then it will be provided forthwith.

## III.

## <u>MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT</u>

The above arguments to dismiss the indictment based on the government's failure to comply with Mr. Santos's Fifth and Sixth Amendment rights is premised on <u>Covian-Sandoval</u> having read into section 1326 an additional element—a deportation that occurred at a particular time—that the government must plead to the grand jury and prove to a jury. To the extent the government argues that <u>Covian-Sandoval</u> did not create an additional element, the indictment contains surplusage. In other words, if the government argues that the <u>timing</u> of a person's deportation is not a element of section 1326, but rather a sentencing factor under subsection (b) of section 1326, the indictment alleges a fact—the timing of a person's deportation—the Supreme Court has clearly held to be decided by a judge.

The Ninth Circuit has "repeatedly held that language [in an indictment] that describes elements beyond what is required under statute is surplusage and need not be proved at trial." <u>Bargas v. Burns</u>, 179 F.3d 1207, 1216 n. 6 (9th Cir. 1999). Surplusage in an indictment is subject to being struck at the request of the defendant. <u>United States v. Fernandez</u>, 388 F.3d 1199, 1220-21 (9th Cir. 2004). In this case, if the government argues that the date of a person's deportation is not a required element of section 1326, the indictment contains language beyond that which is necessary to convict Mr. Santos of violating section 1326. If the date of a person's deportation is not an element of section 1326, then the language in the indictment—" "It is further alleged that defendant SERGIO SANTOS was removed from the United States subsequent to December 15, 2003."—is surplusage. So too is the government's allegation in the indictment that Mr. Santos violated section 1326, subsection (b).

At one time, the Ninth Circuit considered subsection (b) of section 1326 a separate offense from subsection (a). <u>See</u> <u>United States v. Corona-Sanchez</u>, 291 F.3d 1201, 1203 (9th Cir. 2002) (*en banc*). This changed, however, following the Supreme Court's decision in <u>Almendarez-Torres v. United States</u>, 523 U.S. 224 (1998). <u>See</u> <u>Corona-Sanchez</u>, 291 F.3d at 1203. In <u>Almendarez-Torres</u>, the Supreme Court decided that subsection (b) of section 1326 described a sentencing provision, to be determined by a judge, rather than a substantive offense. <u>See id.</u> Following <u>Almendarez-Torres</u>, the Ninth Circuit rethought the way in which subsection (b) should be viewed, to the extent that indictments and judgements that reflect a violation of both subsection (a) and subsection (b) of section 1326 should have the reference to subsection (b)

1  struck to "unambiguously reflect that the defendant was convicted of only one punishable offense

2  pursuant . . .." Id.

3          Although an allegation of a particular date of deportation would likely be an appropriate response

4  on the government's part to the holding of Covian-Sandoval, the government here has chosen to include in

5  the indictment an allegation that goes solely towards an allegation under subsection (b) of section 1326.

6  Indeed, the government has chosen to actually allege a violation of subsection (b) of section 1326 in the

7  indictment.  As Almendarez-Torres makes clear, however, Congress clearly intended findings under

8  subsection (b) of section 1326 to made by a judge, rather than a jury.  Almendarez-Torres, 523 U.S. at 235

9  ("we believe that Congress intended to set forth a sentencing factor in subsection (b)(2) and not a separate

10  criminal offense).

11          Although the Ninth Circuit is free to overrule its own precedent regarding whether Congress

12  intended a statutory provision to be decided by a judge, rather than a jury, see, e.g., United States v. Buckland,

13  289 F.3d 558, 564-68 (9th Cir. 2002) (en banc) (discussing enhanced penalties under 21 U.S.C. § 841), it has

14  not seen fit to overrule the Supreme Court's decision in Almendarez-Torres.  See, e.g., United States v.

15  Weiland, 420 F.3d 1062, 1079 n. 16 (9th Cir. 2005).  For these reasons, to the degree the government argues

16  that Covian-Sandoval did not create an additional element of section 1326, the government has pled in the

17  indictment an allegation that Congress intended to be decided by judge, rather than a jury.[4]  Therefore,

18  pursuant to Federal Rule of Criminal Procedure 7(d), Mr. Santos moves to strike this surplusage from the

19  indictment.

20

21

22

23

24

---

25          [4] The holdings in Covian-Sandoval and Almendarez-Torres also render subsection (b) of
    section 1326 unconstitutional.  In Covian-Sandoval, the Ninth Circuit held that a jury must

26  determine the timing of a person's deportation to trigger subsection (b)'s enhanced statutory
    maximum.  Covian-Sandoval, 462 F.3d 1097-1098.  In Almendarez-Torres, however, the Supreme

27  Court held that Congress intended subsection (b) to be a sentencing provision to be determined by
    a judge.  Almendarez-Torres, 523 U.S. at 235.  It is thus clear that subsection (b), as written and

28  construed by the Supreme Court, violates Apprendi.

07CR3216-IEG

# IV.

## MOTION TO PRODUCE GRAND JURY TRANSCRIPTS

Mr. Santos hereby moves this Court to compel the government to produce all grand jury transcripts in this case. See U.S. CONST. AMENDS V & VI[5].  Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) allows disclosure "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  Given the arguments raised above, it is clear that "a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P 6(e)(3)(E)(ii).  Mr. Santos requests the Court "authorize disclosure" of the grand jury transcript to allow Mr. Santos to adequately prepare for trial and to perfect his appellate record.  See id.

# V.

## MOTION TO SUPPRESS STATEMENTS

Mr. Santos moves to suppress his statements on the grounds of an invalid Miranda waiver and voluntariness.

**A.**    **The Government Must Demonstrate Compliance with _Miranda_.**

In order for any statements made by Mr. Santos to be admissible against him, the government must demonstrate that they were obtained in compliance with the Miranda decision. The government must establish that Mr. Santos's waiver of his Miranda rights was voluntary, knowing, and intelligent.  See Schneckloth v.

---

[5] The Supreme Court has found that "[t]he grand jury is an integral part of our constitutional heritage which was brought to this country with the common law.  The Framers, most of them trained in the English law and traditions, accepted the grand jury as a basic guarantee of individual liberty . . . the grand jury continues to function as a barrier to reckless or unfounded charges. 'Its adoption in our Constitution as the sole method for preferring charges in serious criminal cases shows the high place it held as an instrument of justice.' Costello v. United States, 350 U.S. 359, 362 (1956).  Its historic office has been to provide a shield against arbitrary or oppressive action, by insuring that serious criminal accusations will be brought only upon the considered judgment of a representative body of citizens acting under oath and under judicial instruction and guidance. " United States v. Manduano, 425 U.S. 564, 571 (1976).  In order to ensure that the criminally accused are safeguarded from reckless and unfounded charges, judges must take their duty to provide guidance seriously and not simply pay lip service to the assurances of the government.  It is curious why the government, in this district in particular, fights so hard to keep grand jury proceedings sealed.  Interestingly, in many cases, the "witness" who "testifies" before the grand jury is a border patrol agent who neither participated in the arrest or the investigation.  He is only called to read a report which has been prepared by others.  Such a practice does not allow for the considered judgment of grand jurors.  Thus, the release of transcripts is appropriate.

1  <u>Bustamonte</u>, 412 U.S. 218 (1973).  When interrogation continues without the presence of an attorney, and

2  a statement results, the government has a heavy burden to demonstrate that the defendant has intelligently

3  and voluntarily waived his privilege against self-incrimination.  <u>Miranda</u>, 384 U.S. at 475.  The court must

4  indulge every reasonable presumption against waiver of fundamental constitutional rights, so the burden on

5  the government is great.  <u>United States v. Heldt</u>, 745 F. 2d 1275, 1277 (9th Cir. 1984).

6        In determining whether a waiver is voluntary, knowing, and intelligent, the court looks to the totality

7  of the circumstances surrounding the case.  <u>Edwards v. Arizona</u>, 451 U.S. 477 (1981); <u>United States v.</u>

8  <u>Garibay</u>, 143 F.3d 534 (9th Cir. 1998).  The Ninth Circuit has held that determination of the validity of a

9  <u>Miranda</u> waiver requires a two prong analysis:  the waiver must be both (1) voluntary and (2) knowing and

10  intelligent.  <u>Derrick v. Peterson</u>, 924 F. 2d 813 (9th Cir. 1990).  The second prong requires an inquiry into

11  whether "the waiver [was] made with a full awareness both of the nature of the right being abandoned and

12  the consequences of the decision to abandon it."  <u>Id.</u> at 820-821 (quoting <u>Colorado v. Spring</u>, 479 U.S. 564,

13  573 (1987)).  Not only must the waiver be uncoerced, then, it must also involve a "requisite level of

14  comprehension" before a court may conclude that <u>Miranda</u> rights have been legitimately waived. <u>Id.</u> (quoting

15  <u>Colorado v. Spring</u>, 479 U.S. at 573).  Unless and until <u>Miranda</u> warnings and a knowing and intelligent

16  waiver are demonstrated by the prosecution, no evidence obtained as a result of the interrogation can be used

17  against the defendant.  <u>Miranda</u>, 384 U.S. at 479.  The government in this case must prove that Mr. Santos

18  waived his rights intelligently and voluntarily.  Mr. Santos disputes any allegation any waiver was knowing,

19  intelligent, and voluntarily.

20  **B.**       **<u>Mr. Santos's Statements Must Be Voluntary.</u>**

21        Even if this Court determines that Mr. Santos validly waived his <u>Miranda</u> rights, it must still make

22  a determination that any statements are voluntary.  Under 18 U.S.C. § 3501(a), this Court is required to

23  determine, whether any statements made by Mr. Santos are voluntary.  In addition, section 3501(b) requires

24  this Court to consider various enumerated factors, including whether Mr. Santos understood the nature of the

25  charges against him and whether he understood his rights.  Without such evidence, this Court cannot

26  adequately consider these statutorily mandated factors.

27        Moreover, section 3501(a) requires this Court to make a factual determination.  Where a factual

28  determination is required, Fed. R. Crim. P. 12 obligates courts to make factual findings.  <u>See</u> <u>United States</u>

1    v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir. 1990). Because "'suppression hearings are often as important

2    as the trial itself,'" id. at 610 (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)), these findings should be

3    supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's

4    responsive pleading.

5         Mr. Santos moves for the production of the following discovery. This request is not limited to those

6    items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody,

7    control, care, or knowledge of any "closely related investigative [or other] agencies." See United States v.

8    Bryan, 868 F.2d 1032 (9th Cir. 1989).

9                                                      **VI.**

10                    **MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE**

11        (1)    The Defendant's Statements. The government must disclose to the defendant all copies of

12    any written or recorded statements made by the defendant; the substance of any statements made by the

13    defendant which the government intends to offer in evidence at trial -- either in its case-in-chief or in rebuttal;

14    see id., any response by the defendant to interrogation; the substance of any oral statements which the

15    government intends to introduce at trial and any written summaries of the defendant's oral statements

16    contained in the handwritten notes of the government agent; any response to any Miranda warnings which

17    may have been given to the defendant; as well as any other statements by the defendant. Fed. R. Crim.

18    P. 16(a)(1)(A)[6]. The Advisory Committee Notes and the 1991 Amendments to Rule 16 make clear that the

19    Government must reveal all the defendant's statements, whether oral or written, regardless of whether the

20    government intends to make any use of those statements. Federal Rule of Criminal Procedure 16 is designed

21    "to protect the defendant's rights to a fair trial." United States v. Rodriguez, 799 F.2d 649 (11th Cir. 1986);

22    see also United States v. Noe, 821 F.2d 604, 607 (11th Cir. 1987) (reversing conviction for failure to provide

23    statements offered in rebuttal -- government's failure to disclose statements made by the defendant is a serious

24    detriment to preparing trial and defending against criminal charges).

25        (2)    Arrest Reports and Notes. The defendant also specifically requests that the government turn

26    over all arrest reports, notes and TECS records not already produced that relate to the circumstances

27    _____

28         [6] Of course, any of Mr. Santos's statements, which are exculpatory, must be produced, as
      well. See Brady v. Maryland, 373 U.S. 83 (1963).

                                                        10                                    07CR3216-IEG

1  surrounding his arrest or any questioning. This request includes, but is not limited to, any rough notes,

2  records, reports, transcripts, referral slips, or other documents in which statements of the defendant or any

3  other discoverable material is contained. Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A)

4  and <u>Brady v. Maryland</u>. The government must produce arrest reports, investigators' notes, memos from

5  arresting officers, sworn statements, and prosecution reports pertaining to the defendant. <u>See</u> Fed. R. Crim.

6  P. 16(a)(1)(B) and (C), 26.2 and 12(I); <u>United States v. Harris</u>, 543 F.2d 1247, 1253 (9th Cir. 1976) (original

7  notes with suspect or witness must be preserved); <u>see also</u> <u>United States v. Anderson</u>, 813 F.2d 1450, 1458

8  (9th Cir. 1987) (reaffirming <u>Harris</u>' holding).

9      (3)    <u>Brady Material</u>. The defendant requests all documents, statements, agents' reports, and

10  tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the

11  government's case. <u>Kyles v. Whitley</u>, 514 U.S. 419 (1995). Under <u>Brady</u>, <u>Kyles</u> and their progeny,

12  impeachment, as well as exculpatory evidence, falls within the definition of evidence favorable to the

13  accused. <u>See also</u> <u>United States v. Bagley</u>, 473 U.S. 667 (1985); <u>United States v. Agurs</u>, 427 U.S. 97 (1976).

14  This includes information obtained from other investigations which exculpates Mr. Santos.

15      (4)    <u>Any Information That May Result in a Lower Sentence Under The Guidelines</u>. The

16  government must also produce this information under <u>Brady v. Maryland</u>. This request includes any

17  cooperation or attempted cooperation by the defendant, as well as any information, including that obtained

18  from other investigations or debriefings, that could affect any base offense level or specific offense

19  characteristic under Chapter Two of the Guidelines. The defendant also requests any information relevant

20  to a Chapter Three adjustment, a determination of the defendant's criminal history, and information relevant

21  to any other application of the Guidelines.

22      (5)    <u>The Defendant's Prior Record</u>. The defendant requests disclosure of his prior record.

23  Fed. R. Crim. P. 16(a)(1)(B).

24      (6)    <u>Any Proposed 404(b) Evidence</u>. The government must produce evidence of prior similar acts

25  under Fed. R. Crim. P. 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609. In addition, "upon request of the

26  accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature" of

27  any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial and the purpose for

28  which introduction is sought. This applies not only to evidence which the government may seek to introduce

1  in its case-in-chief, but also to evidence which the government may use as rebuttal.  See United States v.

2  Vega, 188 F.3d 1150 (9th Cir. 1999).  The defendant is entitled to "reasonable notice" so as to "reduce

3  surprise," preclude "trial by ambush" and prevent the "possibility of prejudice."  Id.; United States v. Perez-

4  Tosta, 36 F.3d 1552, 1560-61 (11th Cir. 1994).  Mr. Santos requests such reasonable notice at least two weeks

5  before trial so as to adequately investigate and prepare for trial.

6          (7)     Evidence Seized.  The defendant requests production of evidence seized as a result of any

7  search, either warrantless or with a warrant.  Fed. R. Crim. P. 16(a)(1)(C).

8          (8)     Request for Preservation of Evidence.  The defendant specifically requests the preservation

9  of any and all physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody,

10  or care of the government and which relates to the arrest or the events leading to the arrest in this case.  This

11  request includes, but is not limited to, the results of any fingerprint analysis, the defendant's personal effects,

12  and any evidence seized from the defendant or any third party in relation to this case.

13          (9)     Henthorn Material.  Mr. Santos requests that the Assistant United States Attorney assigned

14  to this case oversee a review of all personnel files of each agent involved in the present case for impeachment

15  material.  Kyles, 514 U.S. at 419; United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991); United States v.

16  Lacy, 896 F. Supp. 982 (N.D. Ca. 1995).  At a minimum, the prosecutor has the obligation to inquire of his

17  agents in order to ascertain whether or not evidence relevant to veracity or other impeachment exists.

18          (10)    Tangible Objects.  The defendant requests the opportunity to inspect and copy, as well as test,

19  if necessary, all other documents and tangible objects, including photographs, books, papers, documents,

20  fingerprint analyses, vehicles, or copies of portions thereof, which are material to the defense or intended for

21  use in the government's case-in-chief or were obtained from or belong to the defendant.  Fed. R. Crim.

22  P. 16(a)(1)(C).  Specifically, to the extent they were not already produced, the defendant requests copies of

23  all photographs in the government's possession, including, but not limited to, the defendant and any other

24  photos taken in connection with this case.

25          (11)    Expert Witnesses.  The defendant requests the name, qualifications, and a written summary

26  of the testimony of any person that the government intends to call as an expert witness during its case in chief.

27  Fed. R. Crim. P. 16(a)(1)(E).  The defense requests that notice of expert testimony be provided at a minimum

28  of two weeks prior to trial so that the defense can properly prepare to address and respond to this testimony,

1 including obtaining its own expert and/or investigating the opinions and credentials of the government's

2 expert. The defense also requests a hearing in advance of trial to determine the admissibility of qualifications

3 of any expert. <u>See</u> <u>Kumho v. Carmichael Tire Co.</u> 119 S. Ct. 1167, 1176 (1999) (trial judge is "gatekeeper"

4 and must determine reliability and relevancy of expert testimony and such determinations may require

5 "special briefing or other proceedings . . ..").

6        (12) <u>Evidence of Bias or Motive to Lie</u>. The defendant requests any evidence that any prospective

7 government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or

8 her testimony.

9        (13) <u>Impeachment Evidence</u>. The defendant requests any evidence that any prospective

10 government witness has engaged in any criminal act whether or not resulting in a conviction and whether any

11 witness has made a statement favorable to the defendant. <u>See</u> Fed. R. Evid. 608, 609 and 613; <u>Brady v.</u>

12 <u>Maryland</u>.

13        (14) <u>Evidence of Criminal Investigation of Any Government Witness</u>. The defendant requests

14 any evidence that any prospective witness is under investigation by federal, state or local authorities for any

15 criminal conduct.

16        (15) <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling</u>. The

17 defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show

18 that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and

19 any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an

20 alcoholic.

21        (16) <u>Jencks Act Material</u>. The defendant requests production in advance of trial of all material,

22 including any tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500;

23 Fed. R. Crim. P. 26.2. Advance production will avoid the possibility of delay at the request of the defendant

24 to investigate the Jencks material. A verbal acknowledgment that "rough" notes constitute an accurate

25 account of the witness' interview is sufficient for the report or notes to qualify as a statement under section

26 3500(e)(1). <u>Campbell v. United States</u>, 373 U.S. 487, 490-92 (1963); <u>see also</u> <u>United States v. Boshell</u>, 952

27 F.2d 1101 (9th Cir. 1991) (holding that, where an agent goes over interview notes with subject, interview notes

28 are subject to Jencks Act).

(17)  <u>Giglio Information</u>.  Pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, express or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information which could arguably be used for the impeachment of any government witnesses.

(18)  <u>Agreements Between the Government and Witnesses</u>.  In this case, the defendant requests identification of any cooperating witnesses who have committed crimes, but were not charged, so that they may testify for the government in this case.  The defendant also requests discovery regarding any express or implicit promise; understanding; offer of immunity; past, present, or future compensation; or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability between any prospective government witness and the government (federal, state and/or local).  This request also includes any discussion with a potential witness about, or advice concerning, any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed.

Pursuant to <u>United States v. Sudikoff</u>, 36 F.Supp.2d 1196 (C.D. Cal. 1999), the defense requests <u>all</u> statements made, either personally or through counsel, <u>at any time</u>, which relate to the witnesses' statements regarding this case, any promises -- implied or express -- regarding punishment/prosecution or detention of these witnesses, any agreement sought, bargained for or requested, on the part of the witness at any time.

(19)  <u>Informants and Cooperating Witnesses</u>.  To the extent that there was any informant, or any other tip leading to a TECS hit in this case, the defendant requests disclosure of the names and addresses of all informants or cooperating witnesses used, or to be used, in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Santos.  The government must disclose the informant's identity and location, as well as the existence of any other percipient witness unknown or unknowable to the defense.  <u>Roviaro v. United States</u>, 353 U.S. 53, 61-62 (1957).  The government must disclose any information derived from informants which exculpates or tends to exculpate the defendant.

(20)  <u>Bias by Informants or Cooperating Witnesses</u>.  The defendant requests disclosure of any information indicating bias on the part of any informant or cooperating witness.  <u>Giglio v. United States</u>.

14

1  Such information would include what, if any, inducements, favors, payments or threats were made to the

2  witness to secure cooperation with the authorities.

3       (21)  <u>Inspection and Copying of A-File</u>. Mr. Santos requests that this Court order the government

4  to make all A-Files relevant to Mr. Santos available for inspection and copying.

5       (22)  <u>Residual Request</u>. Mr. Santos intends, by this discovery motion, to invoke his rights to

6  discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution

7  and laws of the United States. Mr. Santos requests that the government provide his attorney with the above-

8  requested material sufficiently in advance of trial to avoid unnecessary delay prior to cross-examination.

9  **VII.**

10  **<u>REQUEST FOR LEAVE TO FILE FURTHER MOTIONS</u>**

11       Mr. Santos and defense counsel have received limited discovery in this case. **Specifically, after**

12  **viewing the a-file, Mr. Santos will be filing a motion attacking the validity of his alleged deportation.**

13  Additionally, a s new information surfaces due to the government providing discovery in response to these

14  motions, or an order of this Court, defense may find it necessary to file further motions, or to supplement

15  existing motions with additional facts. The denial of this motion will result in a violation, at a minimum, of

16  Mr. Santos's Fifth and Sixth Amendment rights. Therefore, defense counsel requests the opportunity to file

17  further motions based upon information gained from discovery.

18       Respectfully submitted,

19  DATED:     December 28, 2007         */s/ John C. Ellis, Jr.*
    JOHN C. ELLIS, JR.

20       Federal Defenders of San Diego, Inc.
    Attorneys for Sergio Santos

21       john_ellis@fd.org

22

23

24

25

26

27

28