**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

ABRAHAM CALDERON-SEGURA,
A.K.A. Abraham Calderon,
    *Defendant-Appellant.*

No. 05-50820

D.C. No.
CR-05-00381-TJW

OPINION

Appeal from the United States District Court
for the Southern District of California
Thomas J. Whelan, District Judge, Presiding

Argued and Submitted
December 7, 2006—Pasadena, California

Filed January 9, 2008

Before: Alex Kozinski, Chief Judge, Stephen Reinhardt and
Melvin Brunetti, Circuit Judges.

Opinion by Judge Brunetti

321

**COUNSEL**

James Fife and Zaki Zehawi, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Hamilton E. Arendsen, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

**OPINION**

BRUNETTI, Circuit Judge:

Abraham Calderon-Segura, a native and citizen of Mexico, was arrested in 2005 by United States Border Patrol agents after they found him hiding in the brush about one mile north of the U.S.-Mexico border. He was indicted by a grand jury and convicted after a jury trial as an alien who had been excluded, deported, or removed and thereafter found in the United States, in violation of 8 U.S.C. § 1326. The evidence admitted at his trial included, among other things, documents showing that in 1999 he was ordered deported and was removed from the United States, and the testimony of a fingerprint expert that a fingerprint exemplar taken from Calderon-Segura matched the exemplar on his 1999 warrant of removal, which positively identified him as the same person who was previously deported.

For purposes of sentencing, the government submitted evidence of multiple prior convictions, including a 1997 conviction in California for forcible rape. Over Calderon-Segura's objections, the district court relied on that aggravated felony conviction to increase the applicable statutory maximum from

two years under 8 U.S.C. § 1326(a) to twenty years under § 1326(b)(2) (applying to defendants "whose removal was subsequent to a conviction for commission of an aggravated felony"). Applying the Sentencing Guidelines as advisory, the court ultimately sentenced Calderon-Segura to 94 months imprisonment.

Calderon-Segura raises three issues on appeal. He collaterally attacks the validity of his prior deportation on due process grounds; contends that the expert testimony on exemplar fingerprint examination should have been excluded as unreliable; and contends that the application of an enhanced statutory maximum under 8 U.S.C. § 1326(b) violated the Fifth and Sixth Amendments because the facts necessary to sustain the enhancement were neither pleaded in the indictment nor proved to the jury. We find no merit in these claims, except the claim of indictment error relating to the sentence, which has some merit but is nonetheless harmless beyond a reasonable doubt. Accordingly, we affirm the conviction and sentence.

# I

## Collateral Attack

Before trial, Calderon-Segura moved to dismiss the indictment pursuant to 8 U.S.C. § 1326(d) on the ground that his 1999 removal, which was the product of expedited proceedings conducted pursuant to 8 U.S.C. § 1228(b), violated due process. We review the denial of such a motion to dismiss *de novo*. *United States v. Camacho-Lopez*, 450 F.3d 928, 929 (9th Cir. 2006).

**[1]** Although there are three requirements for a collateral attack on an underlying deportation order, in this case the parties dispute only whether "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d)(3). "An underlying removal order is 'fundamentally unfair' if: '(1) a defendant's

UNITED STATES v. CALDERON-SEGURA     327

due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects.' " *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004) (brackets and citation omitted).

Calderon-Segura first contends that 8 U.S.C. § 1228(b)(1) violates equal protection by granting the Attorney General seemingly unfettered discretion to choose between expedited removal proceedings under § 1228(b) or general removal proceedings under 8 U.S.C. § 1229a in cases involving similarly-situated non-lawful permanent resident aliens (non-LPRs) with aggravated felony convictions.[1] He argues that the Attorney General's decision to place him in expedited proceedings deprived him of review by an immigration judge and eligibility for discretionary relief from removal, both of which would have been afforded in general removal proceedings. *See id.* §§ 1182(a), 1229a(a)(1). Expedited proceedings are conducted by a Service officer, not an immigration judge, and the alien is statutorily deemed ineligible for any discretionary relief from removal. 8 U.S.C. § 1228(b)(5); *United States v. Garcia-Martinez*, 228 F.3d 956, 960 (9th Cir. 2000); 8 C.F.R. § 1238.1.

[2] "It is well established that all individuals in the United States—citizens and aliens alike—are protected by the Due Process Clause of the Constitution. It is equally well established that the Due Process Clause incorporates the guarantees of equal protection." *Garberding v. INS*, 30 F.3d 1187, 1190 (9th Cir. 1994). Nonetheless, as there is no assertion here that the Attorney General's discretion implicates fundamental

---

[1]Section 1228(b)(1) provides: "The Attorney General may, in the case of an alien [not lawfully admitted for permanent residence], determine the deportability of such alien under section 1227(a)(2)(A)(iii) of this title (relating to conviction of an aggravated felony) and issue an order of removal pursuant to the procedures set forth in this subsection or section 1229a of this title."

| 328 | UNITED STATES v. CALDERON-SEGURA |
|---|---|

rights or involves a classification along suspect lines, only rational basis scrutiny applies. *See Taniguchi v. Schultz*, 303 F.3d 950, 957 (9th Cir. 2002); *Tapia-Acuna v. INS*, 640 F.2d 223, 225 (9th Cir. 1981).

**[3]** We agree with the Fifth and Eighth Circuits that a rational basis exists for granting the Attorney General discretion to place some non-LPR aggravated felons into expedited removal proceedings and others into potentially more lenient general removal proceedings. *Gonzalez v. Chertoff*, 454 F.3d 813, 818 (8th Cir. 2006); *Flores-Ledezma v. Gonzales*, 415 F.3d 375, 381-82 (5th Cir. 2005). As those courts have recognized, the aliens described in § 1228(b) "include many persons who could rationally be granted special deference and courtesy under the immigration laws: ambassadors, diplomats, employees of foreign governments, journalists, scholars, teachers, and professors, among others." *Flores-Ledezma*, 415 F.3d at 381, *quoted in Gonzalez*, 454 F.3d at 818. To paraphrase our decision in *Taniguchi*, 303 F.3d at 958, although it might have been wiser, fairer, and more efficacious for Congress to have deemed all non-LPR aggravated felons ineligible for the benefits available in general removal proceedings, the decision of Congress was nonetheless a rational first step towards the legitimate goal of rapidly removing criminal aliens. We therefore conclude that 8 U.S.C. § 1228(b)(1) does not violate equal protection.

As a "second, independent" basis for invalidating his prior removal, Calderon-Segura contends that his due process rights were violated because he was not advised of his eligibility for two forms of discretionary relief. Specifically, he claims he should have been advised that he could voluntarily withdraw his application for admission and freely depart the country pursuant to 8 U.S.C. § 1225(a)(4), or that he could apply for a waiver under 8 U.S.C. § 1182(h) as the father of four children who are United States citizens.

**[4]** But even if Calderon-Segura might have otherwise qualified for such relief, neither was "a 'plausible' ground for

relief from deportation" once he was placed in expedited removal proceedings. *Ubaldo-Figueroa*, 364 F.3d at 1050. Both forms of relief are expressly conditioned on the Attorney General's exercise of "discretion." 8 U.S.C. §§ 1182(h), 1225(a)(4). Yet, as a non-LPR aggravated felon subject to expedited removal, Calderon-Segura was statutorily ineligible for any discretionary relief. *Id.* § 1228(b)(5). We therefore conclude that the agency's failure to advise him of discretionary relief that he was statutorily barred from obtaining neither violated his due process rights, nor was it prejudicial. *Cf. United States v. Garcia-Martinez*, 228 F.3d 956, 963-64 (9th Cir. 2000) (holding that the defendant's prior expedited removal did not violate due process by virtue of the presiding officer's institutional bias, but even if it did the statutory bar of § 1228(b)(5) precluded a showing of actual prejudice).

**[5]** Because Calderon-Segura has failed to show the requisite due process violation and prejudice to establish that his prior removal was "fundamentally unfair" under 8 U.S.C. § 1326(d)(3), the district court properly denied the motion to dismiss the indictment.

## II

### Expert Testimony on Fingerprint Identification

Calderon-Segura contends that the district court erred in admitting at trial expert testimony on fingerprint identification, which the government presented to prove the fact of his 1999 removal. The government's expert was an instructor in fingerprint identification and testified that an inked thumbprint exemplar he took from Calderon-Segura matches the inked thumbprint appearing on his 1999 warrant of removal.

Calderon-Segura originally raised his objection in a motion in limine, contending that fingerprint identification testimony does not satisfy the test of evidentiary reliability or scientific validity required by Federal Rule of Evidence 702 and *Dau-*

| 330 | UNITED STATES v. CALDERON-SEGURA |
|---|---|

*bert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 n.9, 593 (1993), and is unduly prejudicial under Federal Rule of Evidence 403. The district court reviewed Calderon-Segura's documentary evidence and heard oral argument on the motion, but it denied both his request for a full "*Daubert* hearing" and the motion itself. The court explained that the motion in limine was based almost exclusively on evidence demonstrating the unreliability of *latent* fingerprint identification, whereas this case involved only the examination of two *inked* fingerprints, the reliability and admissibility of which is long-established. As the expert testified, a latent print must be developed or "dusted" using chemicals and then lifted from whatever surface it happens to be on to enable examination, whereas an inked fingerprint is taken under controlled circumstances using an ink pad and white paper and it produces a black and white image that is sufficient for examination. But while the court denied the motion to exclude, it did afford the defense the opportunity to voir dire the government's expert before trial and to cross-examine him during trial regarding his qualifications and his comparison of the exemplar fingerprints in this case.

We review the district court's decision to admit expert testimony for an abuse of discretion. *United States v. Alatorre*, 222 F.3d 1098, 1100 (9th Cir. 2000). This includes not only the court's ultimate admissibility determination under *Daubert* and Rule 702, but also its decisions regarding the type of proceedings required to conduct the gatekeeping inquiry in a particular case. *See id.* at 1101, 1105. We find no abuse of discretion here.

**[6]** Calderon-Segura's contention that the demonstrated problems with latent fingerprint identification apply equally to exemplar fingerprints is unsupported by the evidence submitted in support of his motion in limine. *Cf. Daubert*, 509 U.S. at 591 (stating that "scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes"). The record evidence and even Calderon-Segura's

UNITED STATES v. CALDERON-SEGURA 331

own arguments suggest the contrary. And, more importantly, he fails to show that any of the asserted problems affected the fingerprint identification in this case. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) ("[T]he gatekeeping inquiry must be tied to the facts of a particular case." (quotation marks and citation omitted)).

For instance, he argues that "there has never been any [empirical] testing to establish the reliability of identifications which are made from latent fingerprint fragments." Yet the fingerprints in this case were exemplars taken under controlled circumstances and were complete, not fragmented. As other courts have recognized, fingerprint identification methods have been tested in the adversarial system for roughly a hundred years. *See United States v. Crisp*, 324 F.3d 261, 266 (4th Cir. 2003).

Calderon-Segura also argues that there are many real-life examples of false identifications and "a shockingly high rate of misidentifications on latent print examiner proficiency exams." Yet he fails to show that the same can be said of comparisons involving two inked fingerprints. Although the methods for examining ridge details of latent prints and inked prints are basically the same, latent prints must first be developed and lifted from any variety of surfaces, are ordinarily less clear than inked prints, and may have fewer available points of comparison due to smudging or fragmentation—all of which increase the potential for errors and misidentifications. Moreover, although he offers evidence that inked prints can be less clear than latent prints in some cases, Calderon-Segura has failed to show that the exemplars at issue in this case lacked clarity, were fragmented, or contained any other defects or artifactual interference that might call into question the accuracy or reliability of their identification.

He next argues that "there is complete disagreement among fingerprint examiners as to how many points of comparison are necessary to make an identification," and that "there is no

332         UNITED STATES v. CALDERON-SEGURA

relevant scientific community, beyond fingerprint examiners themselves, that have displayed any kind of general acceptance for the proposition that reliable identification can be made from small distorted latent fingerprint fragments." But, again, this case did not involve fragments, and the government's expert positively matched the two exemplars without qualification regarding any minimal number of points of comparison. Indeed, without rebuttal from the defense, the expert testified at trial that the exemplars are "identical" and that it is impossible for two people to have the same fingerprint. *Cf. Crisp*, 324 F.3d at 267 (affirming the admission of fingerprint evidence, while noting that the expert in that case "was unable to reference any study establishing that no two persons share the same fingerprint; she was able only to testify that no study had ever proven this premise false"); *United States v. Havvard*, 117 F. Supp. 2d 848, 854 (S.D. Ind. 2000), *aff'd*, 260 F.3d 597, 601 (7th Cir. 2001) ("[I]f anyone were to come across a case in which two different fingers had identical fingerprints, that news would flash around the legal world at the speed of light.").

**[7]** As the district court was presented with no evidence calling into question the evidentiary reliability of exemplar fingerprint identification, neither generally nor regarding the exemplars in this case, there is no merit in Calderon-Segura's contention that the district court abused its discretion in failing to conduct a more searching examination of the *Daubert* factors or in declining his request for a full *Daubert* hearing. In *Kumho Tire*, the Supreme Court instructed:

> The trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable. . . . Otherwise, the trial judge would lack the discretionary authority needed to avoid unnecessary "reliability" proceedings in

> ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises.

526 U.S. at 152. Given the familiar subject matter and the defense's failure to show cause for questioning the evidentiary reliability of exemplar fingerprint identification methods, this is just the sort of routine case where evidentiary reliability was properly taken for granted. *See Crisp*, 324 F.3d at 268-69 (holding that "the district court was well within its discretion in accepting at face value the consensus of the expert and judicial communities that the fingerprint identification technique is reliable"). The procedures adopted by the district court for determining evidentiary reliability, and for permitting the defense to inquire into the expert's qualifications and bases for his proffered opinions, were well within the court's discretion in fulfilling its gatekeeping function. *See Alatorre*, 222 F.3d at 1104-05. Thus, the expert testimony was properly admitted.

### III

### Sentencing

Relying on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny, Calderon-Segura finally contends that the district court's application of an enhanced statutory maximum under 8 U.S.C. § 1326(b) violated the Fifth and Sixth Amendments because the indictment did not allege, and the jury did not find, either the date of his prior removal or the temporal relationship between the prior removal and his prior aggravated felony conviction.

[8] Notwithstanding the fact that the jury's verdict did not specify the date or relative timing of Calderon-Segura's prior removal, there is no jury trial error here. All the evidence of

prior removal in this case related to only one removal that occurred in 1999, and based on that evidence the jury found the defendant "guilty of being a deported alien found in the United States." Thus, "the jury necessarily found beyond a reasonable doubt" not only the fact of a prior removal, but also the date of the removal and that it occurred subsequent to his 1997 rape conviction for purposes of the § 1326(b)(2) enhancement. *United States v. Martinez-Rodriguez*, 472 F.3d 1087, 1092 (9th Cir. 2007) (as amended).

The claim of indictment error raises more complex issues; however, they are now easily resolved under our recent decision in *United States v. Salazar-Lopez*, 506 F.3d 748 (9th Cir. 2007).

**[9]** To begin, it is now clear that there was indictment error in this case. Under *Salazar-Lopez*, in order for a defendant to be eligible for an enhanced statutory maximum under § 1326(b), the indictment must allege, in addition to the facts of prior removal and subsequent reentry, either the date of the prior removal or that it occurred *after* a qualifying prior conviction. *Id.* at 752. Yet the one count indictment against Calderon-Segura included no such allegation.

**[10]** Nevertheless, it is equally clear under *Salazar-Lopez* that such *Apprendi* error, which Calderon-Segura timely raised for sentencing purposes, is subject to harmless error review. *Id.* at 753. And on this record, we find the error harmless beyond a reasonable doubt. Aside from raising various *Apprendi*-related legal objections to the pre-sentence report's recommendations, Calderon-Segura "made no factual attack" on the applicability of an enhanced statutory maximum under § 1326(b). *Id.* at 755. Nor is this one of those cases "where the record [is] too indeterminate for us to conclude what result would have obtained had the question been properly placed before the grand . . . jur[y]." *Id.* at 755-56. Given the documentary evidence proving the facts and dates of Calderon-Segura's prior removal and aggravated felony conviction, we

| UNITED STATES v. CALDERON-SEGURA | 335 |
|---|---|

are satisfied beyond a reasonable doubt that the result would have been the same absent the error. *See id.* at 756.

Although Calderon-Segura also raises a variety of arguments relating to the scope and continuing validity of *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), and the constitutionality of 8 U.S.C. § 1326(b), they are foreclosed by existing precedent and require no special discussion. *See Salazar-Lopez*, 506 F.3d at 751 n.3. Also, given the state of the record, there is no factual or legal merit in the contention that the government failed to submit, or the defense failed to receive, any judicially noticeable documents to prove the fact or nature of Calderon-Segura's prior convictions under *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 125 S. Ct. 1254, 1257 (2005).

The conviction and sentence are **AFFIRMED.**